CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 31 2011

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| HERALD G. SMITH, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:10CV00137 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By: Hon. Glen E. Conrad |
| Commissioner of Social Security, | ) | Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social

Security denying plaintiff's claims for disability insurance benefits and supplemental security

income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42

U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g)

and 42 U.S.C. § 1383(c)(3). As reflected by the memoranda and argument submitted by the

parties, the issues presently before the court are whether the Commissioner's final decision is

supported by substantial evidence, or whether there is "good cause" to necessitate remanding the

case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Herald G. Smith, Jr., was born on June 12, 1966, and eventually completed

his high school education. Mr. Smith has worked as a press operator, parts clerk/manager,

inventory control clerk, and cashier. The record indicates that he last worked on a regular and

sustained basis in 2006. On May 31, 2007, Mr. Smith filed applications for disability insurance

benefits and supplemental security income benefits. He alleged that he became disabled for all

forms of substantial gainful employment on July 31, 2006, due to lumbar multilevel degenerative

joint and disc disease. Mr. Smith now maintains that he has remained disabled to the present

time. As to his claim for disability insurance benefits, the record reveals that Mr. Smith met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See, gen., 42 U.S.C. §§ 414 and 423.

Mr. Smith's claims were denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated January 29, 2010, the Law Judge also determined that Mr. Smith is not disabled. The Law Judge found that plaintiff suffers from severe impairments including disorders of the spine and obesity. The Law Judge then assessed plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except the claimant requires a sit/stand option to change positions as needed. Further, the claimant cannot climb, stoop, kneel, crouch, or crawl and should avoid excessive vibration and hazards such as unprotected heights and moving machinery.

(Tr. 22). Based on such a residual functional capacity, the Law Judge ruled that plaintiff is unable to perform any of his past relevant work roles. However, given his residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge found that Mr. Smith retains sufficient functional capacity to perform other work roles that exist in significant number in the national economy, including the roles of clerical worker, machine operator, and assembler. Accordingly, the Law Judge ultimately concluded that Mr. Smith is not disabled, and that he is not entitled to benefits under either federal program. See 20 C.F.R. §§ 404.1520(g) and 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security

2

Administration's Appeals Council. Having exhausted all available administrative remedies, Mr. Smith has now appealed to this court.

While the plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether the plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. While Mr. Smith suffers from musculoskeletal difficulties, the court finds that the evidence supports the Law Judge's determination that Mr. Smith retains sufficient physical capacity to perform a limited range of sedentary exertion. On the other hand, the court does not believe that the Administrative Law Judge adequately considered all of the medical evidence submitted in connection with the plaintiff's claim for benefits. Although the medical doctor who performed a consultative examination on behalf of the state agency specifically noted that the plaintiff is blind in his left eye, the Law Judge failed to mention this impairment in his opinion. Likewise, the Law Judge omitted any reference to Mr. Smith's vision impairment in questioning the vocational expert as to the existence of particular, alternate work roles which plaintiff could be expected to perform.

3

Consequently, the court finds "good cause" for remand of this case to the Commissioner for further development and consideration.

Despite the cogent arguments of plaintiff's counsel, the court does not believe that Mr. Smith's exertional impairments, standing alone, support a determination of total disability. The medical records reveal that plaintiff was treated for back and leg pain at the University of Virginia. On February 22, 2007, he was examined by Dr. Vincent M. Arlet, an orthopaedic surgeon. Plaintiff reported that he had been coaching t-ball, and that he could "only get the ball if the ball [was] thrown at him directly." (Tr. 316). An MRI performed that day showed multilevel degenerative changes, while an x-ray showed no instability. Other than recommending physical therapy, Dr. Arlet indicated that there was "nothing [that could] be done for this patient." (Tr. 316).

On March 5, 2007, Mr. Smith was seen by Dr. David S. Rubendall at the University of Virginia Physical Medicine and Rehabilitation Clinic. (Tr. 314). Dr. Rubendall observed that he had last examined Mr. Smith in July 2005, at which time he recommended physical therapy but Mr. Smith declined to pursue it. Although plaintiff's range of motion was limited, Dr. Rubendall found that plaintiff walked with a normal gait, that his sit-to-stand motion was normal, and that his heel walking and toe walking were normal. Dr. Rubendall noted that Mr. Smith was not a candidate for surgery. (Tr. 314). When plaintiff returned to Dr. Rubendall on April 5, 2007, after having had several physical therapy sessions, plaintiff exhibited only mild discomfort and reported that he was "pleased with his progress." (Tr. 312).

Mr. Smith returned to the Physical Medication and Rehabilitation Clinic on May 10, 2007, after experiencing a slight flare-up of back pain following a car accident. (Tr. 310).

4

During examinations conducted by Dr. Rubendall on July 1, 2007 and August 12, 2007, Mr. Smith had a normal gait pattern, normal sit-to-stand motion, and 75 percent of normal lumbar range of motion. (Tr. 326-327, 343-344). Plaintiff could also heel stand and toe stand, and he was neurologically intact in both lower extremities. Dr. Rubendall noted that plaintiff was "self limiting his activities which he states does well for him," and that there was no other treatment that the doctor would recommend at that point. (Tr. 343). When plaintiff returned to Dr. Rubendall five months later, he reported that his medication regimen was "working well for him," and denied any other increase in symptomatology. (Tr. 456-457).

In May of 2008, Mr. Smith began to complain of pain in his left leg. (Tr. 434). After receiving epidural steroid injections that provided some relief, the plaintiff decided to undergo a diskectomy. (Tr. 439-441, 434). He advised Dr. Arlet that his leg pain was 70 percent of his problem and that his back pain accounted for only 30 percent. Dr. Arlet advised plaintiff that the surgery would improve his leg pain, but that he should not expect any improvement in his back pain. (Tr. 434).

The L5-S1 diskectomy was successfully performed on December 8, 2008. (Tr. 421-422). On December 24, 2008, Mr. Smith advised Dr. Arlet that "the pain that used to radiate below his knee [was] gone." (Tr. 420). When plaintiff returned for a follow-up appointment several months later, he still appeared to have some back pain but otherwise was "doing fine." (Tr. 495). Dr. Arlet noted that the plaintiff "may be a candidate for a light duty job, a sedentary type of job or occupation that would [accommodate] a standing and sitting position." (Tr. 495).

In addition to the foregoing opinion from Dr. Arlet, the Commissioner's findings of residual functional capacity for a limited range of sedentary exertion find support in a

5

consultative evaluation performed by Dr. Christopher Newell on May 27, 2009. (Tr. 460-462).
In the court's view, Dr. Newell's report constitutes a fair and comprehensive evaluation of Mr.
Smith's medical history as well as plaintiff's residual functional capacity. Based on the
plaintiff's physical examination, which revealed that the plaintiff is blind in his left eye and that
the pupil in that eye is nonreactive, Dr. Newell listed the following diagnoses:

      1.    Left trochanteric bursitis.

      2.    Lumbar spondylosis/DDD.

(Tr. 461-462). Dr. Newell went on to offer the following functional assessment:

> The number of hours the claimant can stand and walk in an 8-hour
> workday is about two hours. The number of hours he can sit is four to six
> hours. The amount of weight he could lift/carry on a frequent basis is 10
> pounds, on an occasional basis is 10 pounds. There are postural
> limitations. There are no manipulative limitations. No communicative
> limitations. He is blind in the left eye. He is able to ambulate without an
> assistive device.

(Tr. 462). Dr. Newell also completed a form evaluation of the plaintiff's physical ability to
perform work-related activities. Dr. Newell opined that plaintiff should never climb, stoop,
kneel, crouch, or crawl, and that plaintiff should only engage in occasional balancing. Dr. Newel
also noted that the plaintiff should never be exposed to unprotected heights, moving mechanical
parts, extreme cold, extreme heat, or vibrations. (Tr. 466-472). In a memorandum in support of
his motion for summary judgment, the Commissioner also relies heavily on the report and
evaluation of Dr. Newell.

      Unfortunately, however, the Administrative Law Judge made no reference to the left eye
blindness noted by Dr. Newell, and it appears from the record that the vocational expert was not
asked to consider the plaintiff's vision impairment. Dr. Sandra Wells Brown appeared at the

6

administrative hearing as the vocational expert. While Dr. Wells Brown indicated that she was

familiar with all of the documents completed by Dr. Newell, she was specifically asked to focus

on the exertional "levels" outlined in the report:

> Q.    Thank you. I'd like you to consider for the purposes of a
> hypothetical that we have an individual with the same age,
> educational background and vocational history. That such a person
> would retain the capacity to perform work at the levels indicated in
> Exhibit 19F [the reports completed by Dr. Newell]. Are you
> familiar with that exhibit?
>
> A.    I am, Your Honor.
>
> Q.    What level of functional capacity would that seem to allow for?
>
> A.    Sedentary, Your Honor.
>
> Q.    Pretty much a sit/stand option kind of - -
>
> A.    Yes, sir.
>
> Q.    - - thing? Well, I meant to ask you this. I assume there are no
> transferrable skills?
>
> A.    That's correct, Your Honor.
>
> Q.    It's pretty clear there's no work that he could do that's relevant in
> his past history.
>
> A.    No, sir.
>
> Q.    Is there other work that such a person could do within those
> restrictions?

(Tr. 53-54). In response to the Law Judge's question, Dr. Wells Brown identified jobs as a

clerical worker, machine operator, and assembler. (Tr. 54-55).

As previously noted, Dr. Newell, the consultative physician who offered what is

seemingly the most comprehensive evaluation of plaintiff's combination of impairments,

7

specifically noted that the plaintiff is blind in his left eye. It would seem to the court that such an impairment to a worker's vision would impact the worker's ability to perform the jobs identified by the vocational expert. Based on Dr. Newell's assessment of the plaintiff's functional capacity, the court is unable to conclude that the vocational expert was asked to consider all of the plaintiff's work-related limitations.

During oral argument, the Commissioner contended that the Law Judge was not required to evaluate the vocational impact of the plaintiff's vision impairment, since the plaintiff's applications for benefits included no mention of a vision problem. However, as other courts have made clear, the Social Security regulations require a Law Judge to consider any impairments a claimant states he has as well as any impairments about which the Law Judge receives evidence. See 20 C.F.R. §§ 404.1512(a) and 416.912(a) ("We will consider only impairment(s) you say you have or about which we receive evidence.") (emphasis added). Thus, while Mr. Smith did not claim his left eye blindness as an impairment when filing his applications for benefits, "the evidence should have alerted the ALJ that [the plaintiff] had another relevant impairment that could contribute to the cumulative effect of [the plaintiff's] other impairments." Clifford v. Apfel, 227 F.3d 863, 873 (7th Cir. 2000); see also Nicholson v. Comm'r of Soc. Sec. Adm'n, 600 F. Supp. 2d 740, 755-756 (N.D. W. Va. 2009) (remanding for consideration of the plaintiff's left eye impairment despite the fact that his application included no mention of a vision problem, since the record contained evidence regarding the impairment); Dorman v. Astrue, 2011 U.S. Dist. LEXIS 31670, at *7-8 (D. Md. Mar. 25, 2011) (remanding for consideration of the plaintiff's obesity, and rejecting the Commissioner's argument that the Law Judge was not required to consider the plaintiff's allegation of obesity since it was not listed as

8

an alleged impairment on her applications).  Accordingly, the court concludes that the Law Judge

erred in failing to consider the plaintiff's vision impairment, and in failing to include the

impairment in the hypothetical question presented to the vocational expert.

In Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989), the United States Court of Appeals for

the Fourth Circuit commented as follows:

> The purpose of bringing in a vocational expert is to assist the ALJ in
> determining whether there is work available in the national economy
> which this particular claimant can perform. In order for a vocational
> expert's opinion to be relevant or helpful, it must be based upon a
> consideration of all other evidence in the record, and it must be in response
> to proper hypothetical questions which fairly set out all of claimant's
> impairments.

Walker, 889 F.2d at 50 (internal citations omitted).

Inasmuch as the hypothetical question to the vocational expert in this case did not include

any references to the vision impairment noted in the consultative report completed at the behest

of the Commissioner, the court finds that the Law Judge's reliance on the vocational expert's

testimony in finding residual functional capacity for alternate work roles is not supported by

substantial evidence.[*]  The court believes that it is necessary to remand this case so that proper

and comprehensive hypothetical questions can be put to a qualified vocational expert.  It can then

be determined whether plaintiff can perform alternate work roles existing at the sedentary level,

given his particular combination of exertional and nonexertional limitations, as well as his age,

education, and work experience.  See, gen., 20 C.F.R. §§ 404.1520(f) and 416.920(f).

---

[*] To the extent the plaintiff argues that the Law Judge also committed error with respect to the particular sit/stand option included in the hypothetical question that was posed to the vocational expert, the court disagrees.  As other courts have observed, a job in which an employee could sit or stand at his discretion "would necessarily encompass frequent sitting and standing."  Ketelboeter v. Astrue, 550 F.3d 620, 626 (7th Cir. 2008).

9

For the reasons stated, the court finds "good cause" for remand of the case to the Commissioner for further development and consideration. <u>See</u> 42 U.S.C. § 405(g). An appropriate order of remand will be entered this day.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER:      This 31ᵈᵗ day of August, 2011.

_____
Chief United States District Judge

10